UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| CHERIE TUTTLE and DWIGHT TUTTLE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 4:12-CV-1487 (CEJ) |
| STERIS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motions filed by defendant to exclude the testimony of plaintiffs' expert, Neil Peters, and to strike Peters' supplemental report. Defendant has also filed a motion for summary judgment. Plaintiffs have filed responses in opposition, and the issues are fully briefed.

**I.   Background**

Plaintiff Cherie Tuttle (Tuttle) was employed as a nurse at St. John's Mercy Hospital in St. Louis, Missouri where she alleges that she sustained serious bodily injuries from slipping and falling on diluted LpH®se One-Step Germicidal Detergent (LpH detergent) that had leaked from a dispensing container onto the floor of a storeroom. Tuttle asserts claims of strict liability product defect, strict liability failure to warn, and negligence against Steris Corporation (Steris), the manufacturer and distributer of LpH detergent. Her husband, plaintiff Dwight Tuttle, seeks damages based on loss of consortium.

LpH detergent is a pesticide used for disinfecting and deodorizing washable, non-porous surfaces. LpH detergent is registered with the Environmental Protection Agency (EPA) under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136, *et seq.* LpH detergent is sold in a concentrated form to be diluted with water

by the consumer and placed into a dispensing container. The concentrated LpH detergent is sold in a bottle with an affixed product label, a secondary label for the consumer to place on a dispensing container, material safety data sheets (MSDS), and a wall card. [Doc. ##33-1, 33-2, 33-3, 33-4]. The secondary label instructs users to "[r]ead LpH se concentrate product label and MSDS for safe handling precautions and proper use instructions." [Doc. # 33-2]. The MSDS instructs users that "[s]pills should be contained and may be cautiously neutralized with sodium bicarbonate, or absorbed on appropriate material and placed in a container for disposal." [Doc. #33-4]. The dispensing container associated with Tuttle's fall was not manufactured by Steris, but it bore Steris' secondary label. [Doc. #50, ¶¶ 13-14].

Plaintiffs retained Peters as their liability expert to testify about the adequacy of the warnings and labeling on the LpH detergent. On May 1, 2013, Peters submitted an expert report on the issue of "whether or not any design, instructional or manufacturing aspects of a container of [LpH detergent] . . . caused or contributed to cause the injuries sustained by Ms. Cherie Tuttle." [Doc. #33-9, at 2]. Peters opined that the labeling on the LpH detergent was defective. At the end of the report, Peters stated that he intended to perform "coefficient of friction testing with exemplar floor surfaces" and that a supplemental report analyzing the results of that testing would be forthcoming. Coefficient of friction testing determines whether a surface is more or less prone to slips and falls when a particular liquid is present.

Defendant moves to bar the testimony of Peters, arguing that he is not qualified to provide opinions on pesticide labeling. Plaintiffs filed a memorandum in opposition and attached Peters' two-part supplemental report. [Doc. #43-2]. Part One contains the results of the coefficient of friction testing and Part Two contains Peters' response

to defendant's motion to bar. Defendant filed a motion to strike the supplemental report, arguing that it improperly raises new evidence and opinions that should have been presented in the original report. Defendant also filed a motion for summary judgment.

## II. Neil Peters' Expert Report

### A. Motion to Exclude Expert Report

The admission of expert testimony in federal courts is governed by Fed.R.Evid. 702, which provides:

> A witness who is *qualified as an expert by knowledge, skill, experience, training, or education* may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

(emphasis added).

District courts act as gatekeepers, ensuring that expert testimony is "not only relevant, but reliable." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). District courts have "broad discretion" in determining whether an expert's testimony is admissible. Weisgram v. Marley Co., 169 F.3d 514, 518 (8th Cir.1999). "[I]t is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case." Prosser v. Nagaldinne, 4:09-CV-2117-JAR (E.D. Mo. Jan. 18, 2013) (quoting Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc., 254 F.3d 706, 715 (8th Cir. 2001)). "The overarching goal of Daubert's gatekeeping requirement is to

ensure that an expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" Sciele Pharma, Inc. v. Brookstone Phamaceuticals, 2011 WL 3844891, *6 (N.D. Ga. Aug. 30, 2011) (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999)). "[I]f a trial court allows an expert to testify beyond her expertise it failed to perform its gatekeeping function under the Daubert case." Marquardt v. Joseph, 1999 WL 196569, *1 (6th Cir. 1999).

In his expert report, Peters reviewed the language of the LpH detergent's product label, secondary label, MSDS, and wall card. Doc. #33, Ex.9 at 6-9. Peters concluded that the detergent's labeling was defective because it did not provide warnings regarding the potential hazards of the release of the product on flooring and did not provide guidance on how to avoid the hazard subsequent to being released. Id. at 11. Peters opined that Steris "should have placed an additional label or modified its existing label to include additional information."

In his deposition, Peters testified that he is currently employed as a fire origin and cause investigator and evidence supervisor at MK & Associates, LLC and has held these position since July 2006. See Doc. #33, Ex. 8, at pp. 6-9. In these roles, Peters "[i]nvestigates vehicular, building, and mechanical fires for origination and causation; maintains chain of custody and records of all incoming and outgoing evidence; designs and performs tests, builds courtroom exhibits and models and conducts research." See Peters' Resume, Doc. #33, Ex. 7. Peters testified that he "does not recall" but does "not think" he has ever been the lead investigator in a case where he evaluated the adequacy of a warning on a product. Doc. #33. Ex. 8, at 16:3-6.

Peters testified that he is also currently employed as an inspector for Archway

Inspections, a home and commercial building inspection company, and has held this position since January 2006. Id. at 18:7-19; Doc. #33, Ex. 7. Peters explained that Archway is an offshoot of MK & Associates and that both companies operate out of the same location. Id. at 18:7-25; 19:13. Peters stated that because of the recession, Archway had not performed an inspection since 2008 or 2009. Id. at 18:7-19; 20-12-22. Peters further acknowledged that his position as an inspector is not relevant to his qualifications in providing opinions in the instant case. Id. at 21:1-21.

From February 2002 to July 2006, Peters worked as an assistant fire investigator and evidence technician at Seanne, Kelsey & Associates. Doc. #33, Ex. 7. Peters explained that prior to May 2006, MK & Associates operated under the name Seanne, Kelsey & Associates, but that the two firms were essentially the same company. Doc. #33, Ex. 8, 7:10-25; 8:1-4. His job duties at Seanne, Kelsey & Associates consisted of assisting in the investigation of fires for origination and causation, maintaining chain of custody and records of all incoming and outgoing evidence, designing and performing tests, building courtroom exhibits and models, and conducting research. Doc. #33, Ex. 7.

From October 2000 to November 2001, Peters worked as a lab technician. Id.; Doc. #33, Ex. 8, at 20:23-25; 21:1. Peters acknowledged that this position is not relevant to his qualifications in providing opinions in the instant case. Id. at 21:1-21.

Peters further testified to being a Certified Fire Investigator with the International Association of Arson Investigators, a Certified Fire Investigator with the Missouri Division of Fire Safety, and a Certified Fire and Explosion Investigator with the National Association of Fire Investigators. Id. at 24:4-24. Peters stated that as part of these certifications, he was not required to evaluate product labels or slip and fall

hazards. Id. at 26:8-12. Peters testified that although he is a safety consultant with the Missouri Division of Labor Standards he has not performed any inspections in that role. Id. at 26:16-25 ; 27:1-8. Peters testified that he understands the issues involved when encountering hazardous materials due to his certification in Hazardous Materials Incident Response: Operations Level. Id. at 31:6-25.

Peters further testified that he could not remember whether he ever evaluated the origin of a leak, that he is not a human factors engineer, and that he has not taken any courses or training in human factors as they relate to warning labels and how people react to warnings. Id. at pp. 37-40. However, Peters stated that he has attended OSHA conferences that deal with warnings on job sites and whether adequate signage alerted the person to the danger involved, but he was not sure if he attended a class on product labels and how they pertain to slip and fall accidents. Id. at pp. 41-42. Peters testified that he has never designed or drafted a product label; has no training or experience in formulating cleaning detergents or pesticides; has no training or experience in formulating products regulated by the Food and Drug Administration (FDA) or the EPA; and does not have any experience with FIFRA. Id. at pp. 42-44, 84.

Based on the foregoing, the Court finds that Peters is not qualified to render an expert opinion on whether the labeling that accompanied the LpH detergent was defective. "A putative expert must have 'specialized knowledge'—which can be based on 'practical experience as well as academic training and credentials'—on the topic to which he seeks to testify." Pennsylvania Trust Co. v. Dorel Juvenile Group, Inc., 851 F.Supp.2d 831, 835 (E.D. Pa. Aug. 25, 2011). Nowhere in his report, deposition, or resume does Peters provide any educational or work experience reflecting specialized knowledge in the field of product warnings or labeling.

Peters is a fire origin and cause investigator and evidence supervisor, who holds various certifications in fire investigation, an undergraduate degree in biology, and an associate's degree in fire protection technology. See Peters' Resume, Doc. #33, Ex. 7. The majority of his technical training involves fire safety, property inspections, and fire investigation. His education and experience do not confer any expertise in analyzing product labels for detergents or pesticides in the context of slip and falls. Peters has not designed or drafted product labels in any professional capacity, and he admits being unfamiliar with product labeling governed by the FDA and EPA. See Lemmermann v. Blue Cross Blue Shield of Wis., 713 F. Supp.2d 791, 800 (E.D. Wis. May 18, 2010) ("While Mr. Schuck's education and job experience reflects considerable expertise in environmental engineering and superior knowledge of the field of chemistry, it shows no similar expertise in the area of warnings."); McCullock v. H.B. Fuller Co., 981 F.2d 656, 657 (2d Cir. 1992) ("The adequacy of the warning labels was at issue, and Woolley is not an expert in that field because he lacks training or experience in . . . the design of warning labels.").

"[F]or an expert witness to be qualified based on experience, that experience must bear a close relationship to the expert's opinion." Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009). Peters admitted that he could not recall ever serving as a lead investigator in a case in which he evaluated the adequacy of a warning on a product and he is not a human factors expert or an engineer. Furthermore, there is nothing in his deposition or report that provides a sufficient link between his professional experience and the opinions in his report. The only link Peters could provide is that "using the scientific method in investigating a fire is the same as investigating another type of accident." Doc. #33, Ex. 8, at 26:1-7; see Lift

Truck Lease & Service, Inc. v. Nissan Forklift Corp., Case. No. 4:12-cv-153-CAS (E.D. Mo. June 21, 2013) (court found that the experience of the proffered expert did not bear a close enough relationship to his opinion to provide a sufficient basis for the opinion); compare to In re Levaquin Products Liability Litigation, 2010 WL 8399948, *7 (D.Minn. Nov. 12, 2010) (expert was qualified to provide opinion on medication labeling because of her long experience in the pharmaceutical industry, *which included* drafting product labels).

Because of Peters' lack of expertise and knowledge, the Court finds that he is not qualified to testify on whether a warning would have prevented Tuttle's injuries or on the adequacy on the LpH detergent. See Lemmermann, 713 F. Supp. 2d at 801 (citing United States v. Hall, 93 F.3d 1337, 1343 (7th Cir. 1996)) ("As a result, the court can only conclude with respect to the issue of failure to warn that the witness is only testifying on the basis of lay opinion, and his testimony is accordingly inadmissable."). Accordingly, the expert report submitted by Peters, dated May 1, 2013, is stricken from the record.

### B.  Motion to Strike Peters' Supplemental Report

The Court has further examined Peters' supplemental report and concludes that Part One of the report is intended to present the results of the coefficient of friction testing and not whether the LpH labeling is defective. Thus, part one of Peters' supplemental report will not be stricken from the record as it pertains to the specific results of the testing. The Court reiterates that any opinions by Peters regarding how these results should affect product labeling is not permitted for the same reasons as stated above.

However, the Court will strike the second section of the supplemental report,

titled "Part Two: Responses to Steris Corporation's Motion to Bar." Doc. #52-2, at 1-15. Peters' personal responses to defendant's motion is not appropriate in an expert report. Furthermore, the same information found in Part Two was included within plaintiffs' memorandum in opposition to defendant's motion to bar, which the Court considered in its determination that Peters is not qualified to offer testimony regarding the labeling of pesticides.

### III. Summary Judgment

#### A. Legal Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

    B.    Discussion

        1.    Preemption

As a preliminary matter, defendant argues that plaintiffs' claims are preempted by FIFRA. Defendant bases this argument on a statement that Peters made in his expert report suggesting that defendant should have used the signal word "WARNING" in its labeling. Defendant argues that because this opinion contradicts the EPA's instruction that pesticides, such as the LpH detergent, use the signal word "DANGER," FIFRA preemption applies. The Court rejects this argument for two reasons: (1) Peters' testimony regarding the adequacy of defendant's labeling has been excluded; and (2) plaintiffs have not made the argument that the LpH detergent was defective as a result of the use of the word "DANGER" or that the labeling should have included language inconsistent with the EPA's requirements.

        2.    Strict Liability and Negligent Failure to Warn

This is a diversity action in which Missouri law applies. HealthEast Bethesda Hosp. v. United Commercial Travelers of Am., 596 F.3d 986, 987 (8th Cir. 2010) (in a diversity action, the court applies the substantive law of the forum state). Under Missouri law, in order to prevail on a strict liability failure to warn theory, plaintiff must show: "(1) defendant sold the product in question in the ordinary course of business; (2) the product was unreasonably dangerous at the time of sale when used as reasonably anticipated without knowledge of its characteristics; (3) defendant did not give adequate warning of the danger; (4) the product was used in a reasonably

anticipated manner; and (5) plaintiff was damaged *as a direct result* of the product being sold without an adequate warning." American Automobile Ins. Co. v. Omega Flex, Inc., 4:11-CV-305-AGF (June 11, 2013) (emphasis added) (quoting Cole v. Goodyear Tire & Rubber Co., 967 S.W.2d 176, 183 (Mo. Ct. App. 1998)).

"In addition, there are two distinct causation requirements for a failure to warn claim: '(1) the product for which there was no warning must have caused plaintiff's injuries; and (2) plaintiff must show a warning would have altered [her] behavior.'" Id. (quoting Cole, 967 S.W.2d at 184); see also Moore v. Ford, 332 S.W.3d 749, 762 (Mo. 2011) ("plaintiffs must show that a warning would have altered the behavior of the *individuals involved in the accident*.") (emphasis added). Under Missouri law, there is a presumption that a warning, if given, would be heeded. Arnold v. Ingersoll-Rand Co., 834 S.W.2d 192, 194 (Mo. 1992). "Summary judgment properly is entered if either causation element is lacking." Id. (citing Mothershead v. Greenbriar Country Club, Inc., 994 S.W.2d 80, 89 (Mo. Ct. App. 1999)). A plaintiff must establish causation in all product liability claims regardless of whether they are premised on strict liability or negligence. Chism v. W.R. Grace & Co., 158 F.3d 988 (8th Cir. 1998) (citing Zafft v. Eli Lilly & Co., 676 S.W.2d 241, 244 (Mo. 1984)).

The Court finds that Tuttle has failed to provide sufficient evidence that she was damaged as a direct result of the sale of LpH detergent without an adequate warning or that an additional warning would have altered her behavior. See Arnold, 834 S.W.2d at 194 (plaintiff "fail[s] to present any evidence suggesting that a warning would have imparted additional information. Absent such a showing, the presumption that a warning would be heeded is not applicable.").

Tuttle testified in her deposition that she used LpH detergent "on probably every

shift," but admitted that she never read the label affixed to the dispensing container. Doc. #33, Ex. 6, Pl.'s Dep., at 36:11-15; 40:15-16; 41:11-23; 86:13-17. In fact, she could not recall ever using the dispensing container because a patient care tech would usually dispense the diluted detergent into spray bottles for her use. Id. at 41:11-25; 42:1-24; 47:8-18. Tuttle testified that because she never read any of the labels associated with LpH detergent prior to her injuries, she would not have known whether there was a slip and fall warning. Id. at 87:22-25; 88:1. She admits that "[i]f the [d]ispensing [c]ontainer [l]abel had contained a warning about slipping on liquids or leaks from the container, [she] would not have known about the warning because she did not read the [label] until after her accident." Doc. #50, ¶ 30.

This evidence shows that the inclusion of additional warnings regarding the potential slip and fall hazards associated with diluted LpH detergent would not have altered Tuttle's behavior or prevented her injuries. See Arnold, 834 S.W.2d at 194; Johnson v. Medtronic, Inc., 365 S.W.3d 226, 232-233 (Mo. App. 2012) (The adequacy of the instructions accompanying the product made no difference in the outcome because those materials were not read prior to the injury). Furthermore, Tuttle has not presented any testimony or evidence showing that an additional warning would have altered any other individual's behavior in this case — *i.e.* affect the way in which hospital employees stored the LpH detergent. Accordingly, Tuttle has not met her burden of proof on the element of causation[1] and defendant is entitled to judgment as a matter of law as to the strict liability and negligent failure to warn claims.

---

[1] Because Tuttle has failed to establish the element of causation, it is unnecessary to address defendant's argument that it does not have a duty to warn of the "common knowledge" risk of slipping and falling on a wet floor.

### 3. Strict Liability and Negligent Product Defect

A manufacturer is liable under a strict liability product defect claim "if the product was in an *unreasonably dangerous defective condition* when put to a reasonably anticipated use, and the plaintiff was *damaged as a direct result* of such defective condition as existed when the product was sold." <u>Richcreek v. General Mottors Corp.</u>, 908 S.W.2d 772, 775 (Mo. App. Aug. 29, 1995) (emphasis added).

The product defect claim in the instant case includes the following allegations: (1) the LpH detergent "as diluted would leak from the dispensing container and onto the floor even when prepared as directed;" (2) "did not contain any components that would prevent it from leaking from the dispensing container;" (3) "created an extremely dangerous slippery substance which was not apparent and/or perceptible from its appearance as a diluted solution;" and (4) "would create a dangerous and hazardous slippery condition on floors which was not apparent and/or perceptible from its appearance as a diluted solution." Doc. #5, Pl.'s Comp., at ¶ 13.

Tuttle does not present any arguments or support showing that a genuine issue of material fact exists as to the substance of this product defect claim. In response to the instant motion, Tuttle does not even address her allegation that diluted LpH detergent is defective because of its ability to leak out of a dispensing container. It is likely that she abandoned this claim due to the fact that all liquids have the potential to leak. Additionally, Tuttle's allegation that diluted LpH detergent is not apparent on a floor is contradicted by her deposition testimony. Tuttle testified that after she fell she looked at the floor and could see a spill and was able to describe it as a "large spill" that was probably a couple of feet wide. Doc. #33, Ex. 6, Pl.'s Dep., at 30:13-16; 32:8-13; 33:1-10. In response to number 22 of defendant's statement of

uncontroverted facts,. Tuttle admitted that although the diluted solution did not contrast with the floor, it would have been obvious to her had she looked down. Doc. #50, at ¶ 22.

The only mention of the product defect allegation in Tuttle's briefing is in the context of defendant's alleged failure to include an adequate warning. See Doc. #49, Pl.'s Response, at p. 4 ("The lack of an adequate warning in itself renders a product defective or unreasonably dangerous within the meaning of Missouri products liability law."). However, what Tuttle misses is that the lack of an adequate warning renders a product defective only "when the product is inherently dangerous" and plaintiffs have "the burden of proof to show that 'the product was defective at the time it entered into the stream of commerce[.]'" See Duke v. Gulf & Western Mfg. Co., 660 S.W.2d 404, 418 (Mo. App. 1983); Boyer v. Bandag, Inc., 943 S.W.2d 760 (763 (Mo. App. 1997). Thus, Tuttle must provide some evidence that the LpH detergent was defective at the time it was sold.

Because the Court has excluded the testimony of Tuttle's expert as to the adequacy of defendant's labeling and because plaintiff has not provided any additional evidence demonstrating that the detergent was defective, the burden of proof cannot be met. See Arnold v. Amada North American, Inc., 2008 WL 3411789, *9 (E.D. Mo. Aug. 8, 2008) (citing Shaffer v. Amada America, Inc., 335 F.Supp.2d 992 (8th Cir. 2003)) (the Eighth Circuit has upheld district court decisions to grant summary judgment in product liability cases finding that once a plaintiff's expert is dismissed, plaintiff was unable to show that the product at issue was in an unreasonably defective condition when sold.).

Furthermore, similar to failure to warn claims, causation must be established.

A plaintiff must prove that "the defect in the product or the negligence of the manufacturer was the proximate cause of the injuries sustained by plaintiff." Dunn v. Nexgrill Industries, Inc., 2009 WL 1774327, *2 (E.D.Mo. June 23, 2009). As previously discussed, plaintiff has failed to show that defendant's alleged failure to warn was the probable cause of plaintiff's injuries. Accordingly, defendant is entitled to judgment as a matter of law as to plaintiffs' strict liability and negligent product defect claims.

### 4. Loss of Support, Services, & Consortium

Claims that are derivative of the cause of action must fail as a matter of law inasmuch as the claims are contingent upon the success of the injured spouse's action — *i.e.* claims for loss of consortium and loss of household services. See Pippin v. Hill-Rom, 4:08-CV-263-TIA (E.D. Mo. Mar. 18, 2009). "Missouri has consistently followed the well-established rule that . . . if the spouse has no valid claim for personal injuries, the plaintiff *cannot recover special damages* flowing therefrom." Id. (emphasis added) (citing Wright v. Barr, 62 S.W.3d 509, 537 (Mo. Ct. App. 2001)) ("A claim for loss of consortium is derivative of the injured spouse's claim, which means 'the defendant must be proved to have caused the original injury, which in turn caused the spouse to suffer.'"). Because Dwight Tuttle's claims are "a derivative cause of action, [they] must fail as a matter of law." Id.

\* \* \*

For the above stated reasons,

**IT IS HEREBY ORDERED** that the defendant's motion to bar the testimony and opinions of plaintiffs' expert, Neil C. Peters [Doc. #32] is **granted**.

**IT IS FURTHER ORDERED** that defendant's motion to strike the expert's supplemental report [Doc. #46] is **granted in part** and **denied in part**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment [Doc. #34] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of March, 2014.